UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH ANTHONY MARTIN | CIVIL ACTION |
| VERSUS | NO. 07-1616 |
| SHERIFF JACK STRAIN ET AL. | SECTION "T" (2) |

## REPORT AND RECOMMENDATION

Plaintiff, Joseph Anthony Martin, is a prisoner currently incarcerated in the St. Tammany Parish Jail in Covington, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against St. Tammany Parish Sheriff Jack Strain, Greg Longino and Marlin Peachey. Martin alleges that he was unconstitutionally subjected to improper administrative lockdown while incarcerated in the St. Tammany Parish Jail. Record Doc. No. 1 (Complaint at p. 5 and attachment). He seeks monetary and injunctive relief. Id.

On May 31, 2007, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Stanley Branton, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985) and its progeny. Following the Spears hearing, defendants filed a motion for summary judgment, Record Doc. No. 18, and plaintiff filed a sworn response. Record Doc. No. 22.

## **THE RECORD**

In his initial written submissions, plaintiff alleged that he was placed in solitary confinement on September 23, 2006 for a period of about four months. Record Doc. No. 1 (Complaint at p. 5 and attachment). Martin alleged that he made a series of complaints and formal grievances before he was released from lockdown by Lt. Perkins about January 25, 2007. Record Doc. No. 1 (Complaint at attachment to p. 5). He stated that he believed he was improperly placed in administrative lockdown.

During the May 17th conference, plaintiff testified that all of his claims arise from a time during which he was incarcerated in the St. Tammany Parish Jail as a pre-trial detainee on a second degree murder charge. Martin said he had been brought to the St. Tammany Parish Jail on September 8, 2006. Plaintiff testified that Deputy Longino placed him in solitary confinement on September 23, 2006, and Lt. Perkins released him on January 26, 2007. He confirmed that his claim is that he was placed in solitary confinement without reason or due process.

Plaintiff testified that he does not know why he was placed in lockdown. However, he argued that, according to the jail handbook, he is entitled to a hearing before being placed in isolation, which he never received. Martin said he had looked at the jail handbook to find the criteria for placing an inmate on administrative lockdown. He alleged that his conduct met none of the stated criteria for being placed in isolation,

which included disciplinary reasons, posing a threat to himself or others, rule violation or medical reasons. Plaintiff also testified that he submitted a written grievance about being placed in isolation and only received an oral response. He stated that, in this response, Lt. Perkins told him that Deputy Longino did not know he was in isolation, and subsequently he was moved.

Martin alleged that, while in solitary confinement, he suffered the following privilege deprivations: no communication with fellow inmates, restricted phone use, no television, no outside or other recreation and no commissary rights. He added that other people in isolation were given 24 hours out of isolation every 10 days, as provided by the inmate handbook, but he was not. Plaintiff testified that he was allowed one hour each day outside the cell, during which he could use the phone or take a shower, but the hour outside the cell was not necessarily at a convenient time. He added that he had a toilet and a sink in the cell, but not a shower.

Martin confirmed during his testimony that he did not receive any physical injuries as a result of his time in isolation.

Thus, plaintiff's sole complaint is that defendants violated his constitutional rights by placing him in isolation at the St. Tammany Parish Jail from September 23, 2006 until about January 26, 2007, without giving him a reason or a hearing. On June 26, 2007, defendants filed a motion for summary judgment, Record Doc. No. 18, based in part on

the affirmative defense of qualified immunity, arguing that plaintiff's constitutional rights were not violated and his placement in lockdown was objectively reasonable for security reasons. In addition, defendants argue that Martin failed to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a), prior to filing his lawsuit, and that he is barred by 42 U.S.C. § 1997e(e) from receiving compensatory damages because he has not suffered a physical injury.

As to the qualified immunity defense, defendants argue that Martin was placed in isolation in good faith for his own protection. Defendants have submitted verified documents and affidavits establishing that plaintiff was charged with first degree murder, was being held without bond and has one or more felony convictions on his criminal record. Record Doc. No. 18-5 (Exhibit A, pp. 2, 8, 16 of 17). Defendants have submitted a fax correspondence from Bruce Stacklin of the office of the indigent defender and an affidavit of Deputy Warden Longino, explaining that Martin was charged with first degree murder of the brother of another inmate, Rene E. Jaunet, who was also incarcerated in the St. Tammany Parish Jail at the same time as Martin. Record Doc. No. 18-5 (Exhibit A, p. 6 of 17, fax memorandum from Stacklin to Longino dated September 12, 2006.)

The evidence submitted by defendants establishes that their reason for placing Martin in isolation was to protect him from any potential problems with inmate Jaunet,

4

the brother of his alleged victim, and in response to the request of Stacklin, who wrote "do not house together" in reference to Martin and Jaunet in the fax. In Deputy Longino's sworn affidavit, he states: "Inmate Joseph A. Martin's placement in protective custody was based on information received from Bruce Stacklin, the investigator of the 22nd Judicial Indigent Defender's Office. Inmate Joseph A. Martin's placement in an isolation cell was done in good faith and to belief [sic] that such placement was for his own protection from another inmate or inmates who might want to cause him harm." Record Doc. No. 18-7 (Exhibit C at p. 2 of 5).

In his Spears testimony, which I have considered as part of plaintiff's opposition to the motion for summary judgment, Martin testified that he did not know why he had been placed in lockdown. In his sworn written opposition to defendants' motion, Record Doc. No. 22, plaintiff states that no other inmates who have problems with individuals also residing in the St. Tammany Jail have been placed in isolation, and he knows of no inmate at the facility with whom he has a problem. Martin reiterates that he has not broken any rule in the jail handbook, nor has he asked for isolation; thus, he argues that he should not have been placed in protective custody, even for the limited four-month period during which he was confined. Plaintiff argues that he was placed in isolation based merely on the assumption of Deputy Warden Longino that he would have problems with another inmate. In response to defendants' argument that he failed to

5

exhaust all administrative remedies available to him, plaintiff asserts that he did complete all the necessary requirements to be moved from isolation and that only one complaint to Deputy Perkins was orally answered.

## ANALYSIS

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998). "'We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.'" Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis

in original)). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" National Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little, 37 F.3d at 1075 (quotation omitted) (emphasis in original).

Defendants' motion for summary judgment is based in substantial part on the defense of qualified immunity. Their argument is both that plaintiff's testimony, even if accepted as true, fails to establish violation by defendants of any constitutional right, and that defendants' conduct in placing plaintiff in isolation for a four-month period was objectively reasonable under the undisputed circumstances.

Qualified immunity shields government officials from individual liability for performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Colston v. Barnhart, 130 F.3d 96, 99 (5th Cir. 1997); Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532-33 (5th Cir. 1997) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

A qualified immunity defense is analyzed under a two-step process. <u>Jacobs v. West Feliciana Sheriff's Dep't</u>, 228 F.3d 388, 393 (5th Cir. 2000); <u>Hare v. City of Corinth</u>, 135 F.3d 320, 325 (5th Cir. 1998). The first step is to determine whether plaintiff has alleged a violation of a clearly established constitutional right. <u>Jacobs</u>, 228 F.3d at 393; <u>Hare</u>, 135 F.3d at 325.

The second step requires the court to determine whether defendants' conduct was objectively reasonable under existing clearly established law. <u>Jacobs</u>, 228 F.3d at 393; <u>Foster v. City of Lake Jackson</u>, 28 F.3d 425, 429 (5th Cir. 1994). In the absence of any allegation of a violation of a clearly established right, defendant is entitled to qualified immunity, and the court need not consider the second question. <u>Id.</u> at 428-29.

For the following reasons, I find that defendants are entitled to qualified immunity in this case and that their motion should be granted on that ground for the following reasons.

First, plaintiff's complaint that he was placed in isolation without justification or process fails to establish any constitutional violation. Martin has no constitutional right to a particular status or classification within any prison. The classification of inmates is an administrative function of the prison. <u>Jones v. Diamond</u>, 636 F.2d 1364, 1376 (5th Cir. 1981) (en banc).[1] Courts accord great deference to prison officials' administrative

---

[1] <u>Overruled on other grounds by</u> <u>International Woodworkers of Am. v. Champion Int'l Corp.</u>, 790 F.2d 1174 (5th Cir. 1986), <u>aff'd sub. nom. Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437 (1987).

decisions and will not interfere with legitimate administration without a constitutional violation.  Bell v. Wolfish, 441 U.S. 520, 547-48 (1979); Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990).  "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates."  Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt v. Helms, 459 U.S. 460, 472 (1983)).  "Classification of inmates in Louisiana is a duty of the . . . [jailer] and an inmate has no right to a particular classification under state law."  Woods v. Edwards, 51 F.3d 577, 581-82 (5th Cir. 1995) (citation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification.  The classification of prisoners is a matter within the discretion of prison officials.  Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials."  Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001).  The Fifth Circuit "has continued to hold post-Sandin that an inmate has no protectable liberty interest in his classification."  Wilkerson v. Stalder, 329 F.3d 431, 435-36 (5th Cir. 2003) (citing Sandin v. Conner, 515 U.S. 472 (1995)).

Defendants' evidence in support of their motion for summary judgment confirms that Martin was not being held in lockdown as punishment for any disciplinary infraction. Instead, he was put in isolation at the suggestion of the 22nd Judicial District Public Defenders Office and at the discretion of the Warden of the jail, based on his violent criminal charge and for his own protection because he was charged with the murder of the brother of another inmate who was then housed in the St. Tammany Parish Jail. Plaintiff has no evidence that creates a triable fact issue as to this material fact.

Accepting as true plaintiff's testimony concerning his improper classification at the jail resulting in his placement in lockdown, he has not established an abuse of the discretion the law assigns to prison officials. Plaintiff's initial classification was a discretionary function of Martin's jailers, based on legitimate administrative considerations, exactly the kind of discretionary administrative decision with which this court should not interfere. No violation of Martin's federal constitutional rights has occurred under the classification circumstances described in his complaint.

In addition, the conditions of Martin's confinement in lockdown, including the denial of privileges described in his testimony, do not establish any violation of his constitutional rights. In <u>Sandin</u>, the United States Supreme Court held that analysis of a prisoner's due process claim relating to his placement in lockdown or other denial of prison privileges begins with determining whether a constitutionally protected liberty

interest exists. Sandin, 515 U.S. at 481-83. "Liberty interests protected by the Fourteenth Amendment may arise from two sources–the Due Process Clause itself and the laws of the States." Hewitt, 459 U.S. at 466. In Sandin, the Supreme Court recognized that although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (citations omitted). Thus, in Sandin, when a prisoner was placed in disciplinary segregation for 30 days and the placement did not inevitably affect the duration of his sentence, the Court held that due process does not require that a prisoner be afforded the procedural mechanisms previously prescribed in Wolff v. McDonnell, 418 U.S. 539 (1974), and Hewitt, 459 U.S. at 460.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997). The Madison court held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns." Id. at 768; accord Dixon v. Hastings, 117 Fed. Appx. 371, 2005 WL 17382, at *1 (5th Cir. 2005); Malchi v. Thaler, 211 F.3d 953, 957-58 (5th Cir. 2000). The court further held in Madison that such restrictions "do not represent the type of atypical,

11

significant deprivation in which a state might create a liberty interest." <u>Madison</u>, 104 F.3d at 768. Examples of prison hardships that <u>would</u> qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction. <u>Sandin</u>, 515 U.S. at 484.

In the instant case, Martin alleges that prison officials provided him with no reason or process in placing him in solitary confinement for about four months. However, <u>Sandin</u> makes clear that no particular process is required, unless something more than a mere change in condition of confinement occurs. <u>See</u> <u>Madison</u>, 104 F.3d at 768. On the contrary, Martin's own testimony establishes that his stay in lockdown deprived him only of certain prison privileges, such as restricted telephone use and prohibitions against television, commissary rights, contact with other inmates and recreation. He has failed to make any showing that the time spent in solitary confinement extended his total time in prison or otherwise resulted in "atypical, significant" hardships. <u>Madison</u>, 104 F.3d at 768; <u>see also</u> <u>Sandin</u>, 515 U.S. at 484. As the record stands, nothing about Martin's stay in lockdown resulted in a violation of due process or other constitutional rights.

In addition, however, under the second prong of the qualified immunity analysis, defendants' conduct in placing Martin in solitary confinement was objectively reasonable given the broad discretion provided to prison officials.

Defendants' evidence establishes that it was objectively reasonable to believe that placing Martin in isolation to protect him from potential threats to his safety and the safety of other inmates would not violate any clearly established constitutional or statutory rights. Defendants' reason for placing plaintiff in lockdown for four months was to avoid the obvious security risk of housing plaintiff in the same facility as the brother of the person he was accused of murdering. There is no evidence that this reason advanced by defendants was not their true motivation or that it was an illegitimate consideration. Instead, it is clear that defendants acted in their discretionary functioning with the good faith motives of maintaining jailhouse security and plaintiff's own safety. There is no triable dispute of these material facts in the plaintiff's testimony or written submissions.

For the foregoing reasons, defendants are shielded from plaintiff's suit by the doctrine of qualified immunity, and their motion for summary judgment must be granted on qualified immunity grounds. Because the case should be dismissed on grounds of qualified immunity, it is unnecessary at this time to address defendants' arguments that plaintiff failed to exhaust all the available Administrative Remedy Procedure and that he cannot pursue his claim for damages because he did not suffer physical injury.

## RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that defendants' motion for summary judgment should be **GRANTED** and plaintiff's complaint **DISMISSED WITH PREJUDICE** on qualified immunity grounds.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this  10th   day of September, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE